# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. RAY FERGERSON, | ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | Case No. 09 C 2105 |
| MIKE ATCHISON, Warden, | ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

An Illinois jury convicted Ray Fergerson of first-degree murder. The trial judge sentenced him to a prison term of life without parole. Fergerson has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. He contends that the prosecution withheld material exculpatory evidence from him and used perjured testimony and that his trial and appellate counsel rendered ineffective assistance. Respondent has moved to dismiss Fergerson's petition as untimely and on the ground that certain of his claims are not sufficiently specific. For the reasons stated below, the Court denies respondent's motion to dismiss.

## Background

Willie Bibbs was murdered on June 14, 1981 on the south side of Chicago. Prosecutors initially tried Earl Hawkins, a member of the El Rukn gang, for the murder, and a jury acquitted him.

Prosecutors later charged Hawkins and a fellow gang member in an unrelated

double homicide. They were tried in a bench trial before Circuit Court Judge Thomas Maloney. Before trial, Hawkins's lawyer arranged to pay Maloney $10,000 to ensure a not guilty verdict. *People v. Hawkins*, 181 Ill. 2d 41, 47, 690 N.E.2d 999, 1001 (1998). The lawyer delivered $10,000 in cash to Maloney on the first day of the trial. Maloney, however, was concerned about an ongoing FBI investigation into bribery in the Chicago courts, so he returned the money. Maloney then found both defendants guilty. He sentenced Hawkins to death on September 19, 1986. *Id.* at 45, 690 N.E.2d at 1001.

Chicago Police Detective Daniel Brannigan observed parts of Hawkins's trial. He was working with the federal government because the FBI suspected that Maloney was accepting bribes. After the conclusion of the trial, Hawkins contacted Brannigan while his appeal was still pending. He offered to help Brannigan, in exchange for getting help himself.

In 1988, Fergerson and three other members of the El Rukn gang were tried for the Bibbs murder. Hawkins testified against them as a witness for the prosecution. He admitted that he wanted to benefit from his testimony but said that the government had not promised him anything. The jury convicted Fergerson and the others on November 18, 1988.

After Fergerson's conviction, he appealed to the Illinois Appellate Court, which affirmed the conviction on June 4, 1993. Respondent claims that Fergerson did not file a petition for leave to appeal (PLA) with the Illinois Supreme Court, and Fergerson does not contest this fact. Fergerson's exhibits, however, include a letter from his public defender stating that the Supreme Court denied his PLA on October 6, 1993. Pet.'s Resp. at 70.

2

In 1991, a federal grand jury indicted Maloney for several bribery-related offenses. Hawkins, who was still under a sentence of death, agreed to testify as a witness against Maloney. At some point, Hawkins pleaded guilty to federal criminal charges as part of plea agreement under which he also promised to cooperate with federal and state authorities. *Id.* at 74, 77. A federal jury convicted Maloney on April 16, 1993. *United States v. Maloney*, 71 F.3d 645, 652 (7th Cir. 1995).

After Maloney was convicted, Hawkins initiated a post-conviction proceeding in state court seeking to have his murder conviction vacated. On January 29, 1998, the Illinois Supreme Court vacated Hawkins's conviction and ordered a new trial. *Hawkins*, 181 Ill. 2d at 64, 690 N.E.2d at 1009. Prosecutors declined to seek the death penalty on retrial, and Hawkins eventually pleaded guilty in exchange for a sentence that gave him the possibility of parole when he turns seventy-two.

In early February 1998, Fergerson received a letter from his former public defender telling him that Hawkins's conviction had been vacated. The public defender attached a newspaper article about Hawkins's case. He suggested that Fergerson seek post-conviction relief on the basis that prosecutors had not disclosed to him at the time of his trial that Hawkins had tried to bribe a judge and was likely to have his conviction overturned.

Fergerson filed a *pro se* petition for post-conviction relief in state court on March 25, 1998. The trial court dismissed the petition as frivolous on June 23, 1998. Fergerson appealed, and the Illinois Appellate Court reversed in 2001. On remand, the state trial court held an evidentiary hearing on Fergerson's claims. The court denied the petition after finding that Fergerson had not shown that prosecutors withheld any

significant evidence. Fergerson appealed, and Illinois Appellate Court affirmed on April 18, 2008. The Illinois Supreme Court denied his PLA on September 24, 2008.

Fergerson filed a successive post-conviction petition in state court, and the trial court denied it on March 6, 2009. Fergerson appealed. The Illinois Appellate Court affirmed on November 24, 2010, and the Illinois Supreme Court denied his PLA on July 5, 2011.

## Discussion

Respondent claims that two of Fergerson's claims are insufficiently detailed and that the entire petition is untimely.

### A. Sufficiency of petition

A habeas petition must "specify all the grounds for relief available to the petitioner" and "state the acts supporting each ground." Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts. Notice pleading is insufficient in habeas corpus proceedings. *United States ex rel. Anderson v. Hardy*, 779 F. Supp. 2d 816, 826 (N.D. Ill. 2011). Respondent argues that the Court should dismiss Fergerson's claims that the prosecution used perjured testimony and withheld material exculpatory evidence in violation of his due process rights because his petition violates Rule 2(c) by failing to set out sufficient facts to support those claims. *See Adams v. Armontrout*, 897 F.2d 332, 333–34 (8th Cir. 1990) (district court properly dismissed petition that merely referred generally to the state court record to support six claims).

Fergerson states in his petition that the prosecution withheld material exculpatory evidence in violation of his due process rights. *Brady v. Maryland*, 373 U.S. 83, 87

4

(1963). The petition does not, however, indicate what evidence the prosecution suppressed. Similarly, Fergerson does not include any facts related to his perjury claim in the petition beyond the statement that "the state[']s witness in chief" committed perjury. Pet. at 7. The petition does not identify who the state's witness in chief was by name. Standing alone, Fergerson's habeas petition does not sufficiently describe his *Brady* or perjury claims. *See United States ex rel. Holland v. Rednour*, 761 F. Supp. 2d 776, 785 (N.D. Ill. 2010) (denying perjury and *Brady* violation claims because petition provided no facts to support them).

Fergerson's response to respondent's motion to dismiss, however, sufficiently indicates the factual basis for his *Brady* and perjury claims. *See Carter v. Ryker*, No. 10 C 3783, 2011 WL 589687, at *10 (N.D. Ill. Feb. 9, 2011) (noting that petitioner's claim did not comply with Rule 2(c), but using petitioner's reply to understand factual basis and address claim on the merits); *Etienne v. Weber*, No. 97 C 5647, 1999 WL 417354, at *3 (N.D. Ill. June 16, 1999) (denying under Rule 2(c) claim that was not supported by either habeas petition or supporting memorandum). The response makes clear that Fergerson believes that Hawkins's testimony at Fergerson's trial, particularly Hawkins's statements that he had no deal with the government and expected to be executed, was false and the prosecution knew it. Likewise, the response reflects that Fergerson's *Brady* claim is that the prosecution withheld evidence related to the fact that Hawkins was working with government investigators and had attempted to bribe Maloney.

In short, the response contains is sufficient factual detail so that the Court is not required to "review the entire state court record . . . to ascertain whether facts exist

5

which support relief." *Adams*, 897 F.2d at 333. Respondent has "a meaningful opportunity to answer [petitioner's] allegations," and the Court will be able to address the merits of the claim. *United States ex rel. Beyah v. Gramley*, No. 98 C 1865, 1998 WL 867411, at *11 (N.D. Ill. Dec. 3, 1998). Indeed, even before receiving Fergerson's response, respondent was able to surmise the facts on which Fergerson based his *Brady* claim and incorporate them into the timeliness argument.

"*Pro se* habeas petitions . . . are to be afforded generous interpretation and construed liberally." *Jones v. McKee*, No. 8 C 4429, 2010 WL 3522947, at *5 n.6 (N.D. Ill. Sept. 2, 2010). Considering Fergerson's habeas petition and response to the motion to dismiss in this light, he has provided sufficient facts to describe his *Brady* and perjury claims.

**B.     Timeliness**

> Under 28 U.S.C. § 2244(d)(1),
>
> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> . . .
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Respondent contends that Fergerson's judgment became final on June 25, 1993, twenty-one days after the denial of his direct appeal, when the time to file an affidavit of

6

intent to file a PLA expired. Ill. Sup. Ct. Rule 315(b) (1993) (amended 2006). At the latest, Fergerson's judgment became final when the Illinois Supreme Court denied any PLA that he filed, which his public defender stated occurred on October 6, 1993. Pet.'s Resp. at 70. Because his judgment became final before the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), April 24, 1996, Fergerson benefitted from a one-year grace period after AEDPA's effective date, and thus he could have filed a habeas corpus petition until April 24, 1997. *Araujo v. Chandler*, 435 F.3d 678, 680 (7th Cir. 2005). Fergerson did not file his first state post-conviction petition until March 25, 1998, after the limitations period for a federal habeas petition had already expired, so the state petition did not toll his limitations period. *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009). Accordingly, if the beginning of Fergerson's limitations period is set by subsection 2244(d)(1)(A), his petition is untimely.

Fergerson contends that the beginning of his limitations period should be determined by subsection 2244(d)(1)(B) or 2244(d)(1)(D) because the state impeded his ability to file the petition or the factual predicates of his claims were not available to him through the exercise of due diligence. Subsection 2244(d)(1)(B) covers situations in which the state creates an impediment that prevents a petitioner from filing any habeas corpus petition. *Moore v. Battaglia*, 476 F.3d 504, 506–08 (7th Cir. 2007) (inadequate law library could constitute impediment preventing petitioner from filing); *Lloyd v. Vannatta*, 296 F.3d 630, 632–33 (7th Cir. 2002) (considering whether state's failure to provide trial transcript was an impediment that prevented petitioner from filing);

7

*see Ramirez v. Yates*, 571 F.3d 993, 1001 (9th Cir. 2009) (impediment must have "altogether prevented him from presenting his claims in *any* form, to any court" (emphasis in original)). Fergerson does not actually contend, however, that the state impeded his ability to file a habeas corpus petition. Rather, he contends that he was not aware of the facts on which his claims are based—specifically, the prosecution's alleged concealment of facts concerning Hawkins—until his former public defender sent him a letter and news story in February 1998. Thus, his real argument is that the time the limitations period began to run should be determined under 28 U.S.C. § 2244(d)(1)(D).

To determine whether a habeas petition is timely under subsection 2244(d)(1)(D), the Court "must consider two issues, first, the date on which [petitioner] discovered the factual predicate of his claim, and second, whether [petitioner] exercised due diligence in discovering this information." *Moore v. Knight*, 368 F.3d 936, 939 (7th Cir. 2004). Section 2244(d)(1)(D) does not "require the maximum feasible diligence, but only due, or reasonable diligence." *Id.* at 940 (internal quotation marks omitted). Respondent does not contest Fergerson's contention that he did not actually discover the factual predicate of his claim until February 1998. Instead, respondent argues that Fergerson could have discovered Hawkins's bribe and participation in Maloney's criminal trial earlier if he had been diligent.

The details of Hawkins's involvement in Maloney's prosecution were discussed by the Seventh Circuit in its November 29, 1995 decision affirming Maloney's conviction. *See Maloney*, 71 F.3d at 651–54. The court discussed how Hawkins's lawyer had arranged to pay $10,000 to Maloney for a not guilty verdict and that

8

Maloney later returned the money. *Id.* at 651. The Seventh Circuit also discussed evidence that the United States Attorney's Office had given preferential treatment to Hawkins and other members of the El Rukns who cooperated, including "facilitat[ing] drug usage, sexual liaisons, and extensive personal phone calls," as well as the fact that this evidence was never disclosed to Maloney's defense lawyers. *Id.* at 653. The decision noted that several federal district court judges had ordered new trials in other cases involving the testimony of cooperating El Rukn witnesses because this evidence had not been disclosed. *Id.* at 652. Respondent also notes that the facts upon which Fergerson bases his claims were available even earlier, because the district court issued an unpublished opinion in Maloney's case discussing Hawkins's cooperation. *See United States v. Maloney*, No. 91 CR 477, 1994 WL 96673, at *2–3 (N.D. Ill. Mar. 23, 1994).

Respondent contends that at the latest, the facts necessary to Fergerson's claims were available when the prison library received the volume of the Federal Reporter containing the Seventh Circuit's *Maloney* decision. An affidavit from a litigation coordinator, Lora Haven, at the Stateville Correctional Center (where Fergerson was incarcerated) states that the law library received a copy of that volume on March 29, 1996. Resp. Ex. J.

The Court's inquiry into due diligence, however, "should take into account that prisoners are limited by their physical confinement." *Moore v. Knight*, 368 F.3d at 940 (prisoner acted with due diligence even though he waited more than a year for friend who was not imprisoned to investigate allegations that jury had *ex parte*

9

communications with judge); *accord Ryan v. United States*, 657 F.3d 604, 607 (7th Cir. 2011) (in section 2255 case, prisoner could have been diligent even if it took two months to learn that attorney had not filed appeal). "Unlike the general population which has greater access to court opinions, prisoners must rely exclusively upon the prison law library to discover information contained in new cases." *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000).

Even though a copy of the Federal Reporter volume containing the *Maloney* decision was in the prison library, Fergerson had no reason to know that this volume—or, for that matter, any material in the library—contained information that would allow him to bring the claims in his habeas corpus petition. Respondent's argument essentially would require that a petitioner read every volume of each case reporter in the prison library as it arrives or face a finding of lack of diligence. That might not even be physically possible, because prisoners lack unlimited access to the prison library. In any event, this is not required for a prisoner to be considered to have exercised due diligence. *See Wilson v. Beard*, 426 F.3d 653, 661 (3d Cir. 2005) (due diligence did not require prisoner to monitor local news twelve years after conviction when there was no reasonable basis to conclude that local news would provide information on prisoner's case); *Poole v. Woods*, No. 08-cv-12955, 2011 WL 4502372, at *17 (E.D. Mich. Aug. 9, 2011) ("[T]his Court does not equate reasonable diligence with requiring petitioner to regularly scour the Detroit Free Press and Michigan Court Reporters more than a half-decade after his direct appeal was exhausted in the off-chance that something unforeseeable yet useful to his case would be found.").

Similarly, due diligence does not require that Fergerson locate and read all unpublished opinions of federal district courts, particularly when there is no evidence that the prison library even possessed copies of the opinions.

Respondent has provided no information available to Fergerson that would have put him on notice that a court had said something about Hawkins that might enable Fergerson to challenge his conviction. Respondent's argument is tantamount to requiring a prisoner to hunt through haystacks trying to figure out whether one of them might contain a needle. Due diligence does not require this. On the present record, there is no basis upon which the Court can find that Fergerson could have discovered the facts forming the basis for his claims with due diligence before he received the letter from his former attorney telling him that Hawkins's conviction had been vacated.

Respondent argues that in *Easterwood*, the Tenth Circuit decided that a prisoner could have found facts contained in a court decision by exercising due diligence once the library had received a copy of that decision. 213 F.3d at 1323. In that case, however, no party argued that the limitations period under section 2244(d)(1)(D) began to run at any time after the prison library received a copy of the decision. The petitioner had been convicted when the jury believed an expert witness who testified that the petitioner was not insane at the time of the crime and was competent to stand trial. *Id.* at 1322–23. A Tenth Circuit case, not related to the petitioner's case, stated that the expert was suffering from untreated bipolar disorder and his diagnostic judgment was not trustworthy. *Id.* at 1323. The district court determined that petitioner's limitations period began to run as soon as the Tenth Circuit decision was issued. *Id.* When the petitioner appealed, he argued only that his limitations period should not begin to run

11

until the prison library received a copy of the Tenth Circuit decision. *Id.* The court agreed, and remanded the case.

Thus in *Easterwood*, the court only recognized that due diligence could not require a prisoner to gain access to a court decision before the prison library received a copy. The court did not determine whether due diligence required a prisoner to read every court reporter that the prison library received, because the prisoner did not argue that it did not. *See also Poole*, 2011 WL 4502372, at *15–17 (recommending finding that prisoner who learned of factual basis for claim from reading court decision in prison library was diligent, but noting that due diligence does not require scouring court reporters).

Respondent argues that even if the statute of limitations for Fergerson's *Brady* claim does not begin until February 1998, the rest of the petition is not timely. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.16 (2005) (suggesting that timeliness under section 2244(d)(1)(D) is determined separately for each claim); *Fielder v. Varner*, 379 F.3d 113, 118–20 (3d Cir. 2004) (holding that limitations periods under section 2244(d)(1)(D) are determined on a claim-by-claim basis because most statutes of limitations work in that manner and otherwise a late accruing claim would allow older untimely claims to be heard). Three of Fergerson's other claims, however, also depend on the knowledge that Hawkins was working with federal investigators and that he had bribed Maloney. Fergerson's perjury claim is that at his trial, Hawkins falsely testified that he had no deals with the government and expected to die on death row and that the prosecution knew the testimony was false. One of Fergerson's ineffective

12

assistance of trial counsel claims is that his counsel was ineffective because he did not investigate enough to realize that the prosecution was using perjured testimony and concealing exculpatory evidence. Fergerson's ineffective assistance of appellate counsel claim is that his appellate counsel did not raise the issue of ineffectiveness of trial counsel. All of these claims depend on Fergerson's knowledge of facts, Hawkins's involvement in the government investigation of Maloney and the vacating of Hawkins's conviction, that Fergerson could not have discovered with the exercise of due diligence until after he received the letter from his former public defender.

Fergerson first learned of the factual basis for these claims via a letter dated February 6, 1998. Pet.'s Resp. at 72. He filed his first petition for state post-conviction relief on March 25, 1998. That petition tolled the limitations period until September 24, 2008, when the Illinois Supreme Court denied his PLA. Fergerson then filed his habeas corpus petition on April 6, 2009. Only 241 days passed in which the limitations period was not tolled, and thus Fergerson's claims relating to Hawkins's testimony are timely.

Fergerson also appears to contend that his trial counsel was ineffective because he failed to call at trial six eyewitnesses who saw what happened at the scene of the Bibbs's murder. Unlike the claims related to Hawkins's testimony, this information was available to Fergerson through the exercise of due diligence at the time of his trial. Fergerson provides a page from the trial transcript in which an attorney states that defense investigators cannot find six witnesses. Pet.'s Resp., Ex. 1 at 25. The Court concludes that the limitations period for any claim Fergerson brings in this regard is determined by subsection 2244(d)(1)(A) and the limitations period expired on April 24, 1997.

**Conclusion**

For the reasons stated above, the Court denies respondent's motion to dismiss [doc. no. 56], except with regard to petitioner's apparent claim of ineffective assistance due to trial counsel's failure to call eyewitnesses. Respondent is directed to answer the remaining claims on the merits by no later than March 29, 2012. Petitioner is directed to reply to the response by no later than April 2, 2012.

```
                               _____
                                       MATTHEW F. KENNELLY
                                       United States District Judge
```

Date: February 22, 2012